UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-931-H

PASTOR BARRY L. GINYARD, SR.                                          PLAINTIFF

v.

CHURCH OF GOD IN CHRIST
KENTUCKY FIRST JURISDICTION, INC., *et al.*                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Pastor Barry Ginyard, was the minister at a local Church of God church. The congregation essentially terminated him from his position as pastor. Ginyard appears to have been successful on an appeal through church hierarchy. However, he did not receive a new trial or the other relief ordered by the church appellate body. Afterwards, Plaintiff filed this lawsuit alleging violations of due process, negligence, intentional infliction of emotional distress, and unjust termination. This case turns on whether federal courts should adjudicate cases concerning internal church ecclesiastical controversies. The Court agrees with Defendants' arguments and for the reasons set forth below, the Court concludes that in these circumstances it should not.

I.

The Church of God in Christ, Inc. (the "Church of God") is a Pentecostal Holiness Christian denomination. The national headquarters and principle offices of the church are located in Memphis, Tennessee. The Church of God has an established hierarchical structure. Bishops, also known as "Jurisdictional Bishops," are appointed to Ecclesiastical Jurisdictions of the Church. Local churches are registered by the Jurisdictional Bishop and pastors of local churches are appointed by the Jurisdictional Bishop. The local church is the basic unit of the

structural organization of the Church of God. A local church may establish its own constitution and by-laws.

Plaintiff, Barry L. Ginyard, Sr., was formerly a pastor of Defendant Moore Temple Church of God in Christ (the "Moore Temple"). The Moore Temple is within the jurisdiction of Defendant Church of God in Christ Kentucky First Jurisdiction, Inc. Defendant, Dwight L. Haygood, Sr., is the Regional Jurisdictional Bishop for Church of God in Christ Kentucky First Jurisdiction, Inc.

Plaintiff assumed the pastoral duties of the Moore Temple in 2009. Three years later, members of the Moore Temple advised Bishop Haygood that Ginyard had exhibited "an array of behavior not consistent with the official manual of the Church of God in Christ." The congregation conducted a jurisdictional trial using the rules of the Official Manual of the Church of God. At the trial, the tribunal found Ginyard guilty of malfeasance, misfeasance, nonfeasance, and conduct unbecoming of a minister. The tribunal removed Ginyard from office and Plaintiff received his last paycheck on February 5, 2012.

Plaintiff filed an appeal with the General Council of Pastors and Elders Judicial Review Committee/Appeals Court, raising issues of procedural errors. The appeals court found procedural irregularities and errors and (1) remanded the case to the local Jurisdictional Council for a new trial within ninety (90) days, unless an appeal to the Judiciary Board is filed; (2) ordered that Ginyard be paid his salary; (3) ordered that the parties consider mediation; and (4) ordered that Bishop Haygood remain the interim Pastor of Moore Temple.

Upon remand, the local jurisdictional council neither conducted a new trial nor appealed the Judicial Review Committee/Appeals Court Opinion & Order. Ginyard's salary was not reinstated. Neither party initiated mediation. The only explanation provided by Defendants is

vague: "For reasons known to the Church of God in Christ Kentucky First Jurisdiction, Bishop Haygood, and/or the Moore Temple Church of God in Christ, the local jurisdictional council did not conduct a new trial and did not appeal the Judicial Review Committee/Appeals Court Opinion & Order." DN 15, p.6.

Ginyard filed this suit alleging deprivation of rights, privileges, and immunities without due process of the law; negligence; intentional infliction of emotional distress; and unjust termination. Ginyard seeks actual and punitive damages.

II.

The United States Supreme Court has long recognized a First Amendment right for religious organizations to control certain of their own internal affairs, including the hiring and firing of their religious leaders. *See*, *e.g.*, *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 132 S.Ct. 694 (2012); *Serbian Eastern Orthodox Diocese for United States & Canada v. Milivojevich*, 426 U.S. 696 (1976); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94 (1952); s*ee also Watson v. Jones*, 80 U.S. 679 (1872) (applying not the Constitution but a "broad and sound view of the relations of church and state under our system of laws" in declining to question a determination by church leaders to recognize the church's antislavery faction's authority to use Walnut Street Presbyterian Church property in Louisville, Kentucky).[1] Rooted in First Amendment principles, the ecclesiastical abstention doctrine, also called the church autonomy doctrine,[2] prohibits secular courts from redetermining the correctness of a decision by a religious tribunal on issues of canon law, religious doctrine, church discipline, or church governance, even when these controversies

---

[1] This case was decided before judicial recognition of the coercive power of the Fourteenth Amendment to protect the limitations of the First Amendment against state action. *See Kedroff*, 344 U.S. at 115-16.
[2] The doctrine stems from "a long line of Supreme Court cases that affirm the fundamental right of churches to 'decide for themselves, free from state interference, matters of church government. . . .'" *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 462 (D.C. Cir. 1996) (quoting *Kedroff*, 344 U.S. at 116).

"incidentally affect civil rights." *Milivojevich*, 426 U.S. at 710. This doctrine applies to circumstances or cases where a religious tribunal or organization allegedly violated its own rules. *Drevlow v. Lutheran Church, Missouri Synod*, 991 F.2d 468, 470-71 (8th Cir. 1993) ("The Constitution forbids secular courts from deciding whether religious doctrine or ecclesiastical law supports a particular decision made by church authorities."); *Travers v. Abbey*, 58 S.W. 247, 248 (Tenn. 1900) (stating that whether the proceedings were irregularly conducted was a question for church authorities, not the courts).

In *Miliovjevich*, the most noted case concerning the issues at hand, the Supreme Court reversed a state court ruling that had set aside a church's decision to defrock and remove one of its clergymen. The Court considered whether the Illinois Supreme Court had properly invalidated the decision of the Assembly of Bishops and the Holy Synod of the Serbian Orthodox Church ("the Mother Church") to "defrock" Bishop Dionisije Milivojevich on the ground that [the decision] was "arbitrary." *Miliovjevich*, 426 U.S. at 718. The Court held that "the inquiries made by the Illinois Supreme Court into matters of ecclesiastical cognizance and polity and the court's action pursuant thereto contravened the First and Fourteenth Amendments." *Id*. at 698. In doing so, it explained:

> The conclusion of the Illinois Supreme Court that the decisions of the Mother Church were "arbitrary" was grounded upon an inquiry that persuaded the Illinois Supreme Court that the Mother Church had not followed its own laws and procedures in arriving at those decisions. . . .
>
> . . . .
>
> [But] it is the essence of religious faith that ecclesiastical decisions . . . are to be accepted as matters of faith whether or not rational or measurable by objective criteria. *Constitutional concepts of due process, involving secular notions of "fundamental fairness" or impermissible objectives, are therefore hardly relevant to such matters of ecclesiastical cognizance.*

*Id.* at 712-13, 714-15 (emphasis added) (footnotes omitted).[3]  "In other words, religious bodies may make apparently arbitrary decisions affecting the employment status of their clergy members and be free from civil review having done so." *Young v. N. Ill. Conference of United Methodist Church*, 21 F.3d 184, 187 (7th Cir. 1994) (interpreting and applying *Milivojevich*).

*Milivojevich* is directly applicable here, as Ginyard's claims depend on this Court's finding Defendants to have acted impermissibly in terminating Ginyard's employment and later disregarding an internal appellate decision to conduct a new trial on his behalf.  In reaching its result, the *Milivojevich* Court explicitly rejected the proposition that the church's alleged failure to follow its own procedures opened the door for civil court review.  "*Milivojevich*, read in its entirety, holds that civil court review of ecclesiastical decisions of church tribunals, particularly those pertaining to the hiring or firing of clergy, are *in themselves* an 'extensive inquiry' into religious law and practice, and hence forbidden by the First Amendment." *Young*, 21 F.3d at 187 (emphasis in original).

Recently, the U.S. Supreme Court reaffirmed that a church has an absolute right to hire and fire ministers and, by necessity, investigate and punish ministers without judicial intervention.  *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 132 S.Ct. 694 (2012).  There, Chief Justice Roberts explained that "it is impermissible for the government to contradict a church's determination of who can act as its ministers." *Id.* at 697.  He reiterated that religious organizations have the freedom from official interference for matters of church government as well as matters of faith and doctrine. The Court expressly recognized the

---

[3] Kentucky courts include among ecclesiastical decisions "disputes concerning theological controversy, church discipline, ecclesiastical government, [and] the conformity of the members of the church to the standard of morals required." *See e.g.*, *Kirby v. Lexington Theological Seminary*, 2012 WL 3046352, at *__ (Ky. App. Jul. 27, 2012), *review granted* Feb. 13, 2013 (unpublished) (quoting *Klouda v. Southwestern Baptist Theological Seminary*, 543 F.Supp.2d 594, 611 (N.D. Tex. 2008), to explain the difference between the ecclesiastical abstention doctrine and the ministerial exception).

ministerial exception (a narrower form of the ecclesiastical abstention doctrine) to employment discrimination claims under Title VII of the Civil Rights Act and other employment discrimination laws. *Id*. at 705-06.

Lower courts have consistently agreed that civil courts should not review the internal policies, internal procedures, or internal decisions of the church, and this includes review of whether a church followed its own internal policies or procedures. *See, e.g.*, *Kral v. Sisters of the Third Order Regular of St. Francis*, 746 F.2d 450 (8th Cir. 1984) ("A claim of violation of the law of a hierarchical church, once rejected by the church's judicial authorities, is not subject to revision in the secular courts."); *Nunn v. Black*, 506 F. Supp. 444, 448 (W.D. Va. 1981) (stating "the fact that local church may have departed arbitrarily from its established expulsion procedure in removing [dissident church members] was of no constitutional consequence"), *aff'd* 661 F.2d 925 (4th Cir. 1981); *Simpson v. Wells Lamont Corp.*, 494 F.2d 490 (5th Cir. 1974); *Burgess v. Rock Creek Baptist Church*, 734 F. Supp. 30 (D.D.C. 1990).

Kentucky courts also follow the ecclesiastical abstention doctrine. *See e.g.*, *Music v. United Methodist Church*, 864 S.W.2d 286, 288-90 (Ky. 1993); *Weiter v. Joseph Kurtz, Roman Catholic Bishop/Archbishop of Louisville*, 2012 WL 6213759 (Ky. App. Dec. 12, 2012) (unpublished), *review denied* Oct. 16, 2013; *Kirby v. Lexington Theological Seminary*, 2012 WL 3046352 (Ky. App. Jul. 27, 2012) (unpublished), *review granted* Feb. 13, 2013.

III.

Here, regardless of how the Plaintiff's claims are labeled, their resolution would require this Court to enter into areas implicating religious freedom. For instance, this Court cannot resolve Ginyard's claims without also considering the circumstances surrounding the removal of Ginyard, his trial, his appeal, and the Church of God's internal affairs. Ginyard admits as much

by stating in his complaint that he has been "deprive[d] … of his due process rights under rules promulgated by the defendant Church of God in Christ, Inc." DN 1, p.5. However, the First Amendment is designed to avoid against excessive entanglement with the decisions of religious organizations, in particular their choice of ministers. If Plaintiff wants to enforce his appeal victory he should appeal with the Church of God's system.

The application of the ecclesiastical abstention or church autonomy doctrine applies to all Defendants and claims in this case. Consideration of any of them would involve questions of church doctrine or rules. By no stretch of the imagination does this doctrine protect churches from all civil law suits. However, in these circumstances, the doctrine properly applies to do so.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is SUSTAINED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record